# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID STINE,<br><br>    Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | ) 1:04-CV-5887-SMS<br>)<br>) DECISION AND ORDER DENYING<br>) PLAINTIFF'S SOCIAL SECURITY<br>) COMPLAINT (DOC. 1)<br>)<br>) ORDER DIRECTING THE ENTRY OF<br>) JUDGMENT FOR DEFENDANT JO ANNE B.<br>) BARNHART, COMMISSIONER OF SOCIAL<br>) SECURITY, AND AGAINST PLAINTIFF<br>) DAVID STINE<br>)<br>) |

   Plaintiff is represented by counsel and is proceeding in forma pauperis with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) benefits under Titles II and XVI of the Social Security Act (Act). Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the Magistrate Judge to conduct all proceedings in this matter, including

1  ordering the entry of final judgment.[1] The matter is currently

2  before the Court on the parties' briefs, which have been

3  submitted without oral argument to the Honorable Sandra M.

4  Snyder, United States Magistrate Judge.

5                          PRIOR PROCEEDINGS

6      On September 13, 2002, Plaintiff filed a claim for SSI

7  benefits under Title XVI of the Act and an application for DIB

8  benefits under Title II of the Act, respectively, alleging

9  disability beginning on July 1, 2001, due to disc damage in his

10 lower back and obesity. (A.R. at 54-58, 195-98.) Plaintiff's

11 claim was denied initially and on reconsideration. (Id. at 24-50,

12 199-208.) Plaintiff requested a hearing before an administrative

13 law judge (ALJ) of the Social Security Administration (SSA). On

14 December 9, 2003, Plaintiff appeared with an attorney and

15 testified before the ALJ, James E. Ross. On January 17, 2004, the

16 ALJ denied Plaintiff's application for benefits. (Id. at 13-17.)

17 Plaintiff appealed the ALJ's decision to the Appeals Council. On

18 April 26, 2004, the Appeals Council denied Plaintiff's the

19 request for review. (Id. at 4-6.)

20     On June 25, 2004, Plaintiff filed the complaint in the

21 instant action. Defendant filed the administrative record on

22 November 11, 2004. On April 5, 2005, Plaintiff filed an opening

23 brief and an amended opening brief. On May 5, 2005, Defendant

24 filed a brief in opposition. On May 13, 2005, Plaintiff filed a

25 reply brief and an amended reply brief.

26 ////

27

28      [1] Judge Robert E. Coyle ordered the case assigned to the undersigned Magistrate Judge for all purposes on November 17, 2004.

<u>ADMINISTRATIVE FINDINGS</u>

The ALJ found that Plaintiff had impairments of hypertension, obesity, and degenerative disc disease of the lumbar spine, but they did not meet or equal a listed impairment; his sleep apnea was a slight impairment that had minimal, if any, effect on Plaintiff's ability to work. Plaintiff had the RFC to lift and carry twenty pounds occasionally and ten pounds frequently, stand and walk for two hours in an eight-hour day, and sit six hours in an eight-hour workday with only occasional stooping, crawling, kneeling and no climbing; he could not perform his past relevant work as an equipment operator and welder's helper, but his capacity for the full range of sedentary work was not significantly reduced by his nonexertional limitations. As a younger individual aged thirty-seven years with a high school education and no transferable work skills, he was not disabled pursuant to Rule 201.28, which was used as a framework for decision. (A.R. 16-17.)

<u>ISSUES PRESENTED</u>

Reference to the parties' briefs reveals that the following issues are presented for decision:

1) Whether the ALJ stated clear and convincing reasons for rejecting Plaintiff's subjective complaints;

2) Whether the ALJ failed to state adequate reasons, supported by substantial evidence in the record, for rejecting the opinion of treating physician Dr. Arian and relying on the opinion of consulting examiners and state medical consultants, and thereby failed properly to evaluate Plaintiff's nonexertional limitations;

3) Whether the ALJ's consideration of Plaintiff's obesity was insufficient because the ALJ failed to analyze how Plaintiff's obesity affected him exertionally and nonexertionally; and

4) Whether the matter should be remanded for the payment of benefits or for correction of legal errors.

FACTS[2]

I. Plaintiff's Testimony

David Stein, aged thirty-seven at the time of the hearing, graduated from high school and worked in industrial refrigeration as an equipment operator and welding assistant. (A.R. 212). He stopped work because he was laid off; he did not return partially because he was taking care of his father, who had cancer for a year and one-half. In July 2001 he began having severe pain in his back, which came on gradually. (A.R. 214-15, 221.)

Plaintiff's ability to sit at one time was limited, and he had to take breaks to switch from one side to the other and to lie down to deal with his constant back pain that was at least seven or eight on a scale of one to ten. (A.R. 217, 220). He described his fatigue as his legs getting weak. (A.R. 220.) His feet would become numb daily for ten to thirty minutes. (A.R. 221). His treatment was medication; he had never had physical therapy. He also testified that his medication (Vicodin ES six times a day, and Soma three times a day) kept him "pretty sedated". (A.R. 218-19). He had one MRI of his spine, and Dr. Roble, a neurosurgeon whom he saw once, opined that surgery would

[2] The facts are drawn largely from Plaintiff's summaries; Defendant does not provide a statement of facts.

4

not be helpful and suggested continuing treatment with the primary care physician, Dr. Arian, who was a family practice physician. (A.R. 216, 218.) Dr. Arian, whom Plaintiff saw at varying frequencies depending upon his pain, had never really said what Plaintiff's prognosis was. (A.R. 221.) Plaintiff did not want to take too much of his medication, so he would go in for a shot if he was in pain; the paperwork usually indicated that he was to return as needed. (A.R. 222.)

While he cooked and tried to help out around his one-bedroom house, he had to work in short spurts while sitting and then lie down for a while before returning to work. (A.R. 220). He testified that he could not kneel, stoop, or squat to the ground without it hurting very badly. (A.R. 220). It was painful to pull on his pants or tie his shoes. (A.R. 221). He did not go to church, movies, visit friends, engage in hobbies or sports, or do any exercise. (A.R. 221.)

II. <u>Medical History</u>

The notes from Kern Medical Center, where Dr. Arian treated David Stein for several years, indicate that on April 25, 2001, David Stein was seen for right hip pain. (A.R. 167). While David Stein was trying to walk more to reduce his weight, he would become winded, which resolved only with rest; hence, he tried to ride his bike, which then caused right buttock hip pain. (A.R. 167). Examination noted pain at the right sciatic notch radiating to his right thigh, and he was diagnosed with right sciatica. (A.R 169). He was given a left hemiblock injection and told to rest two to three days and resume walking. (A.R. 168). He was allergic to Codeine. (A.R. 175). He was seen again for

pancreatitis and GERD (gastroesophageal reflux disease) on June 15, 2001, and August 14, 2001, and was told to wean off of Prozac, a psychiatric medication. (A.R. 158-165). By November 2001, Plaintiff was seen again for pancreatitis secondary to alcohol binging and GERD and was noted to have lost 28 pounds on the Atkins diet, now weighing 379 pounds, and he was to start a smoking cessation plan. (A.R 155).

On January 17, 2002, Plaintiff suffered an injury to his right shoulder from heavy lifting; he was unable to take Motrin due to stomach irritation. (A.R. 153). As he already took Vicodin and was allergic to Codeine, he was prescribed Naprosyn. He was diagnosed with bursitis in the right shoulder and right sciatica. (A.R. 151-153). He returned February 15, 2002, with right shoulder pain radiating to the neck and arm with numbness of the right forearm and fourth and fifth fingers when he rotated his shoulder; he also complained of GERD. The examination revealed decreased shoulder range of motion and positive Tinel's sign warranting a lidocaine injection and a diagnosis of bursitis. (A.R. 146-149). He returned March 1, 2002, with numbness in his arm affecting his fingers and left leg. (A.R 145). He was advised to have an open CT scan or MRI due to radiculopathy. (A.R 143-144).

On March 26, 2002, it was noted that he continued to have lower back pain and burning in his legs, left worse than right, and still had numbness in his right hand. (A.R. 141). He was on Vicodin and Soma which helped, but he still had intense pain. (A.R. 141). Examination showed decreased range of motion in the lumbosacral spine, positive straight leg raising, decreased

sensory response in the left lower extremity resulting in a diagnosis of obesity, lower back pain with radiculopathy, and rule out disc herniation with a referral for an MRI. (A.R. 136, 139). He was prescribed Toradol, and medications were ordered refilled. (A.R. 140).

An MRI as interpreted by Dr. Frank Archibeque, dated April 21, 2002, shows degenerative disc changes at L4-L5 and L5-S1, right paracentral disc protrusion at the L4-L5 level slightly narrowing the right neuroforamina, narrowing of the bilateral neuroforamina at L5-S1 secondary to the disc bulge and mild facet hypertrophy, and small, insignificant left paracentral/neuroforaminal disc protrusion at L3-4. (A.R. 193-94).

Notes of May 9, 2002, indicate continued back pain confirmed by MRI results; Plaintiff was referred to neurosurgery. (A.R. 134). On July 25, 2002, treatment notes indicate chronic sharp radiating pain to his knee and that he had a cyst on his right gluteal cleft. Plaintiff was morbidly obese at 396 pounds. (A.R. 129-131). Examination showed 50 degrees forward flexion, 15 degrees lateral bending, 5 degrees extension, and he was prescribed Toradol, Vicodin, Vioxx, and Keflex. He was advised to quit smoking (A.R. 129-131).

Notes of contacts on August 29, 2002 through August 3, 2003 reveal that in 2002 Plaintiff was doing well with the Bipap machine for sleep apnea but was "not exercising due to back pain"; in February 2003 the assessment included hypertension, compressed discs, morbid obesity (a gain of 24 pounds), and sleep apnea; there were complaints of right shoulder pain and

depression, and pain medications were refilled. (A.R 122, 127,
181-189). It is noted that his physician referred him for mental
health in August 2003 as depression was repeatedly noted, and he
had been on psychiatric medications previously. (A.R. 181).

Dr. Norman Linder completed a comprehensive orthopedic
evaluation of Plaintiff on December 28, 2002. Dr. Linder's
report, sent January 9, 2003, indicates that Plaintiff was 5'9"
tall at 390 pounds and complained of low back pain shooting down
the bilateral lower extremities to the calves, and morbid
obesity. (A.R. 107). Medications listed were Vioxx once a day,
Vicodin three times a day, and Soma three times a day. (A.R.
107). Plaintiff reported that he could sit 45 minutes, walk up to
500 feet, stand up to 20 minutes, carry up to ten pounds, but had
trouble climbing stairs, bending over, and reaching overhead. Dr.
Linder observed that Plaintiff was in no apparent distress, could
transfer on and off the table independently, and was easily
fatigued and somewhat out of breath with movement during the
examination. (A.R. 107). Plaintiff had tenderness to palpation in
the lumbosacral paraspinals without trigger points or spasms.
Plaintiff's gait was antalgic, toe and heel walking were normal,
Romberg's and straight leg raising were negative; lumbar region
flexion was 0 to 45 degrees, extension 0-10 degrees, lateral
flexion 0-10 bilaterally, and strength was 4/5 in the bilateral
hip flexors and extensors, knee flexors and extensors, ankle
plantar and dorsiflexors, and extensor hallucis longus. (A.R.
108). There was a normal sensory exam in the bilateral lower
extremities. Dr Linder referred to a report of an MRI of the
lumbosacral spinel, but it does not appear that he was able to

review it. (A.R. 107.) Dr. Linder's impression was lumbosacral muscle ligamentous sprain/strain, and morbid obesity. (A.R. 109.)

Dr. Linder opined that Plaintiff could lift ten pounds frequently and 20 pounds occasionally, stand and/or walk continuously for half an hour to an hour for a total of four hours in an eight-hour day, sit six hours with routine breaks, and refrain from frequent climbing, stooping, crouching, crawling, or kneeling. (A.R. 108-09.)

Treating physician Dr. Arian opined on December 8, 2003, that due to obesity, addiction, hypertension, osteo-arthritis with degenerative joint disease, and specifically based on the MRI of April 21, 2003 that revealed narrowing of the foramina, Plaintiff was unable to perform any full-time work at any exertional level  (A.R. 190-192). Plaintiff could sit for six hours in a day, stand for one hour, and walk one hour with three 20-minute rest breaks in an eight-hour day; he could not crawl, crouch, bend, or lift over 10 pounds as of 2001. (A.R. 190). Dr. Arian's Physical Capacities Evaluation of the same date indicated similar limitations, adding that he could not climb, squat, or reach at all, could sit at most for one hour at a time, must often alternate between sitting, standing and lying down, and his pain was rated as "moderate" (could be tolerated but would cause marked hardship in the performance of the activity which precipitates the pain, and would restrict ability to maintain concentration). (A.R. 191-192).

State medical consultant Dr. Lavanya Bobba, M.D. opined on January 10, 2003, and Dr. K. Quint confirmed on May 6, 2003, that due to mild disc disease of the lumbar spine and morbid obesity,

Plaintiff could occasionally and frequently lift and carry ten pounds, stand two hours in an eight-hour day, sit six hours, occasionally climb stairs, stoop, kneel, crouch, and crawl, but never climb ladders or ropes, or balance  (A.R. 111-120).

## SCOPE AND STANDARD OF REVIEW

_____Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance, Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson*, 402 U.S. at 401. The Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion; it may not simply isolate a portion of evidence that supports the decision. Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). It is immaterial that the evidence would support a finding contrary to that reached by the Commissioner; the determination of the Commissioner as to a factual matter will stand if supported by substantial evidence because it is the Commissioner's job, and not the Court's, to resolve conflicts in the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

In weighing the evidence and making findings, the

Commissioner must apply the proper legal standards. <u>Burkhart v.</u> <u>Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must review the whole record and uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. <u>See,</u> <u>Sanchez v.</u> <u>Secretary of Health and Human Services</u>, 812 F.2d 509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If the Court concludes that the ALJ did not use the proper legal standard, the matter will be remanded to permit application of the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th Cir. 1987).

## ANALYSIS

### I. Disability

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is

capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[3] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

With respect to SSI, the five-step evaluation process is essentially the same. <u>See</u> 20 C.F.R. § 416.920.

II. <u>Rejection of Plaintiff's Subjective Complaints</u>

---

[3] All references are to the 2004 version of the Code of Federal Regulations unless otherwise noted.

Plaintiff argues that the ALJ failed to present a clear and convincing rationale for rejecting Plaintiff's testimony regarding his pain.

The existence and severity of a person's reaction to a physical ailment, such as the existence and severity of pain, are subjective phenomena, the extent of which cannot be objectively measured. Byrnes v. Shalala, 60 F.3d 639, 642 (9th Cir. 1995). In order to reject a claimant's subjective complaints, the ALJ must provide specific, cogent reasons for the disbelief. Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Once the claimant introduces medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the subjective symptoms, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence such as objective medical findings. Id.; Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996). Unless there is affirmative evidence tending to show that the claimant is malingering, the reasons for rejecting the claimant's testimony must be clear and convincing, and the ALJ must set forth the rejection by identifying what testimony is not credible and what evidence undermines the claimant's complaints. Lester v. Chater, 81 F.3d at 834. The findings of the adjudicator must be properly supported by the record and must be sufficiently specific to allow a reviewing court to conclude that the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony. Bunnell v. Sullivan, 947 F.2d 341, 345-46; Byrnes v. Shalala, 60 F.3d at 641-42 (9th Cir. 1995); see 20 C.F.R. § 404.1529(c)

[disability] and 20 C.F.R. § 416.929(c) [supplemental security income].

Social Security Ruling 96-7p directs the adjudicator to consider not only objective medical evidence of signs, laboratory findings, and medical opinions, but also the following factors when assessing the credibility of an individual's statements:

> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and adverse side effects of any medication for pain or other symptoms;
> 5. Treatment, other than medication, for relief of pain or other symptoms;
> 6. Any measures other than treatment used by the individual to relieve the pain or other symptoms; and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

See also Bunnell v. Sullivan, 947 F.2d at 346.

The ALJ noted Plaintiff's claims of severe, constant back pain, weak legs, numb feet, and pain with kneeling, stooping, and squatting. (A.R. 15.) The ALJ concluded that although Plaintiff had impairments that could reasonably be expected to produce some of the symptoms he alleged, the degree of limitation he alleged was not supported by the objective medical evidence and was not entirely credible when evaluated under Social Security ruling 96-7p. (A.R. 14.) The ALJ found that Plaintiff's symptoms' nature, location, onset, duration, frequency, radiation, and intensity were not corroborated by the record to the degree alleged. (A.R. 15.) The ALJ noted that Plaintiff stated he saw Dr. Adrian only as needed for pain. (Id.) The ALJ found relevant the fact that Plaintiff did not receive treatment consistent with a chronic

pain syndrome such as biofeedback, acupuncture, physical therapy, use of a TNS unit, or attendance at a pain management clinic. (A.R. 15.)

An ALJ may rely on the conservative nature of treatment or a lack of treatment in rejecting a claimant's subjective complaint of pain. Johnson v. Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). To the extent that medical evidence is inconsistent, conflicting, or ambiguous, it is the responsibility of the ALJ to resolve any conflicts and ambiguity. Morgan v. Commissioner, 169 F.3d 595, 603 (9th Cir. 1999). Thus, the ALJ was not required to interpret Plaintiff's long-term, continued use of only pain medication merely as evidence of severe pain; the ALJ was entitled to interpret the record as showing that Plaintiff sought renewals of his pain medication but not any additional treatment for his pain.

It was appropriate for the ALJ to consider the lack of objective indicia of Plaintiff's impairments, including lack of objective clinical findings, inconsistent activities of daily living, use of conservative treatment, extent of efforts to obtain relief, and effectiveness of medications in controlling the symptoms. Soc. Sec. Ruling 96-7p and 20 C.F.R. § 416.929(c)(4)(1)(vii); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); Bunnell v. Sullivan, 947 F.2d at 346 (9th Cir. 1991); Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others, Moisa v.

15

Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v.
Commissioner 169 F.3d 595, 600 (9th Cir. 1999).

The medical evidence was reasonably interpreted as being
inconsistent with Plaintiff's claims. The record showed some
narrowing of the foramina and complaints of pain, but Plaintiff's
relatively infrequent follow-up visits with the family
practitioner for medication were unaccompanied by attempts to
seek any further amelioration of Plaintiff's pain symptoms;
surgery was not indicated. Plaintiff's assertion that there was
no evidence that any other pain treatment would have been
effective misses the mark; the significant factor is Plaintiff's
apparent failure even to articulate a need for, or to seek,
additional, different treatment for his allegedly constant,
severe, disabling pain.

Considering all the circumstances of the instant case, the
reasons stated by the ALJ were of clear and convincing force. In
the present case, although there might have been factors
supporting Plaintiff's credibility, the ALJ nevertheless
articulated clear and convincing reasons, supported by
substantial evidence, for discrediting Plaintiff's subjective
complaints of pain. Cf. Batson v. Commissioner of the Social
Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).
Further, the reasons were sufficiently specific to allow this
Court to conclude that the ALJ rejected the claimant's testimony
on permissible grounds and did not arbitrarily discredit
Plaintiff's testimony.

III. Weighing of Expert Opinions

Plaintiff argues that the ALJ failed to state adequate

16

reasons, supported by substantial evidence in the record, for rejecting the opinion of treating physician Dr. Arian and relying on the opinion of consulting examiners and state medical consultants, and thereby failed properly to evaluate Plaintiff's nonexertional limitations.

The ALJ adopted the weight limitations of the consulting physiatrist, Dr. Linder, of 20 pounds occasionally and ten pounds frequently, rejecting not only the state agency physicians' opinions that Plaintiff could only lift ten pounds, but also Dr. Arian's opinion that Plaintiff could not even engage in sedentary work. (A.R. 15.) The ALJ adopted the state agency physicians' assessments that Plaintiff could stand and walk for two hours, preferring it to Dr. Arian's opinion that Plaintiff could stand and walk for only one hour at a time, and Dr. Linder's opinion that Plaintiff could stand and walk for one hour at a time but up to four hours total in an eight-hour day. (A.R. 15.) The ALJ accepted Dr. Linder's and the state agency physicians' opinions that Plaintiff could sit for six hours. The ALJ concluded that Plaintiff should not engage in climbing and only occasional stooping, crawling, and kneeling; this assessment was largely consistent with Dr. Linder's opinion that Plaintiff should not frequently climb, stoop, crouch, crawl, or kneel as well as with the state agency physicians' conclusion that Plaintiff could occasionally climb ramps, stoop, kneel, crouch and crawl but never climb ladders, ropes, or scaffolds.

The ALJ summarized the three RFC's of the treating physician, state agency physicians, and consulting examining physician. He then stated:

1
2
3
4

> The Administrative Law Judge is giving little
> weight to Dr. Arian's opinion as it is quite conclusory,
> providing little explanation of the evidence relied on
> in forming that opinion. The Administrative Law Judge
> is giving significant weight to the opinions of the
> state agency medical physicians and those of Dr. Linder
> which are supported by the objective medical evidence.

5  (A.R. 15.) The ALJ then proceeded to review Plaintiff's

6  subjective claims and conclude that Plaintiff's subjective claims

7  were not fully credible.

8      The Court defers to the opinion of a treating physician

9  because of a greater opportunity to know and observe the patient

10  as an individual and because the purpose of the employment is to

11  cure the patient. Morgan v. Commissioner of Social Sec. Admin.,

12  169 F.3d 595, 600 (9th Cir. 1999). However, an ALJ may disregard

13  a treating physician's opinion whether or not it is contradicted.

14  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). For

15  example, an ALJ may reject a treating physician's opinion that is

16  brief and conclusory in form with little in the way of

17  clinical findings to support its conclusion. Id.

18      An ALJ may disregard a treating physician's opinion that is

19  controverted by other opinions only by setting forth specific,

20  legitimate reasons for doing so that are based on substantial

21  evidence in the record. Rodriguez v. Bowen, 876 F.2d 759, 762

22  (9th Cir. 1989). This burden is met by stating a detailed and

23  thorough summary of the facts and conflicting clinical evidence,

24  stating the interpretation of the evidence, and making findings.

25  Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir 1986). A failure to

26  set forth a reasoned rationale for disregarding a particular

27  treating physician's findings is legal error. Cotton v. Bowen,

28  799 F.2d at 1408.

1    Likewise, the medical opinion of a nontreating doctor may be

2    relied upon instead of that of a treating physician only if the

3    ALJ provides specific and legitimate reasons supported by

4    substantial evidence in the record. Id. at 1202, citing Lester v.

5    Chater, 81 F.3d 821, 830 (9th Cir. 1995). The contradictory

6    opinion of a nontreating but examining physician constitutes

7    substantial evidence, and may be relied upon instead of that of a

8    treating physician, where it is based on independent clinical

9    findings that differ from those of the treating physician.

10   Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). The

11   opinion of a nontreating, nonexamining physician can amount to

12   substantial evidence as long as it is supported by other evidence

13   in the record, such as the opinions of other examining and

14   consulting physicians, which are in turn based on independent

15   clinical findings. Andrews v. Shalala, 53 F.3d at 1041.

16   The record supports the ALJ's conclusion that the treating

17   physician's opinion as to RFC was conclusional and provided

18   little explanation of the evidence that provided the basis for

19   the opinion. The only objective finding relied on by Dr. Arian

20   was the MRI reflecting the degenerative disc changes and the

21   narrowing of the foramina, which was taken in April 2002; yet Dr.

22   Arian found Plaintiff so disabled as of 2001. Reference to the

23   MRI report shows that at L4 there were small left

24   paracentral/neuroforaminal disc protrusions that did not cause

25   spinal stenosis and did not significantly narrow the the

26   neuroforamina, and only mild facet disease bilaterally. (A.R.

27   193.) At L5 there was a right paracentral disc protrusion that

28   did not cause spinal stenosis; the left neuroforamina was patent

19

with only a mild narrowing of the right neuroforamina secondary to the disc bulge, and mild facet hypertrophy. (Id.) At S1 there was a central disc protrusion which only slightly flattened the anterior aspect of the thecal sac but did not cause spinal stenosis; there was narrowing of the bilateral neuroforamina secondary to disc bulge with mild to moderate facet hypertrophy bilaterally. (A.R. 193.)

In addition to this set of essentially mild findings, the record of treatment reveals relatively infrequent treatment notes and complaints from Plaintiff. There were only two occasions in 2001 involving Plaintiff's spinal condition; on one occasion, Plaintiff demonstrated good range of motion (April 25, 2001, A.R. 168-69), and on the other, Plaintiff reported that he was doing exercise and dieting (November 14, 2001, A.R. 155). There are only a few (approximately six) treatment notes regarding Plaintiff's spinal condition in 2002 (January, March, May, July, and August (A.R. 150, 142-45, 138-41, 133, 129, 124)); of the four from 2003, Plaintiff had normal motor strength, sensory exam, and gait in May (A.R. 188, 122, 187, 182).

Dr. Arian's RFC assessment appeared on a form that called mainly for checks and filling in of blanks. It is permissible for an ALJ to prefer an opinion supported by specific clinical findings and an explanation thereof over a check-off type of form lacking an explanation of the basis for the conclusions. Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (citing Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983)); see Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, as previously noted, because of

the findings reflected in the report of the MRI, the reference to the MRI does not serve to explain how, on the basis of objective medical evidence, Dr. Arian came to his conclusions. It is established that even where an expert's report identifies characteristics that might limit a claimant's ability to perform work on a sustained basis, if the report fails to explain how such characteristics preclude work activity in the claimant's case, it is appropriate and adequate for an ALJ to 1) determine that the level of impairment stated is unreasonable in light of the symptoms and other evidence in the record, and 2) set forth that analysis. See Morgan v. Commissioner of Social Security 169 F.3d 595, 601 (9th Cir. 1999).

Finally, in connection with his RFC analysis, the ALJ noted how Plaintiff's complaints were exaggerated and not corroborated by the record. (A.R. 15.) The fact that an opinion is based primarily on the patient's subjective complaints may be properly considered. Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Where a treating source's opinion is based largely on the Plaintiff's own subjective description of his or her symptoms, and the ALJ has discredited the Plaintiff's claim as to those subjective symptoms, the ALJ may reject the treating source's opinion. Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989).

Plaintiff argues that the opinions of the consultative examiner and the state medical consultants could not constitute substantial evidence because those opinions were rendered without consideration of the MRI of April 2002. The Court recognizes that one factor in evaluating an expert opinion is the extent to which

21

1  an acceptable medical source is familiar with the other

2  information in the case record; an opinion should be based on the

3  Plaintiff's condition as a whole. 20 C.F.R. § 416.927(d)(6).

4  Also, a more recent opinion may in some circumstances be entitled

5  to greater weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.

6  1993).

7       However, Plaintiff's assumption that the state medical

8  consultants did not have any information from the MRI does not

9  appear to be borne out by the record. The consultation request to

10 the confirming state medical consultant, Dr. Quint, who rendered

11 his opinion in May 2003, reflects a diagnosis of disc compression

12 L4-5, L2-3, apparently as reflected in February 2003. (A.R. 179.)

13 The records from February 2003 post-date the MRI and clearly

14 refer to the diagnosis of disc compression L4-L5 on left and L2-

15 L3 on right (A.R. 122), which in turn is based upon the earlier

16 MRI.

17      Further, although the MRI provided some findings

18 substantiating the existence of an impairment, in view of the

19 essentially mild findings resulting from the MRI, the Court

20 concludes that a failure to consider the MRI is not an omission

21 that renders the other expert opinions insubstantial support for

22 the ALJ's RFC.

23      Plaintiff argues that Dr. Linder's assessment was

24 inconsistent with the medical record because it limited Plaintiff

25 to occasional bending, but Dr. Linder found lumbar flexion of

26 only 0 to 45 degrees. However, Plaintiff has not shown that an

27 ability to bend to 45 degrees renders him unable to bend

28 occasionally; no evidence concerning the extent of bending

1   required in work activities is in the record.

2       Plaintiff asserts that Dr. Linder's notes reveal that
3   Plaintiff was easily fatigued and somewhat out of breath with
4   movement during the consultative examination; combining that with
5   an antalgic gait and decreased lower extremity strength is
6   inconsistent with Dr. Linder's finding that Plaintiff had the
7   ability to stand and walk for four hours in a day at half to hour
8   intervals. However, it appears that the consultative exam
9   involved more than simply standing and walking; it involved heel
10  and toe walking, flexion, extension, rotation, raising of the
11  legs, movement onto and off of tables, strength tests, etc. Thus,
12  it does not necessarily appear that Dr. Linder's opinion was
13  inconsistent with her findings.

14      The Court concludes that the ALJ here stated his reasons and
15  relied on evidence that was such as a reasonable mind might
16  accept as adequate to support the conclusions. Substantial
17  evidence supported the ALJ's conclusions regarding Plaintiff's
18  RFC.

19      IV. <u>Obesity</u>

20      Plaintiff argues that the ALJ failed to provide the
21  individualized assessment required by Soc. Sec. Ruling 02-1p
22  regarding how the obesity affected Plaintiff exertionally and
23  nonexertionally.

24      Plaintiff, who has counsel here and had counsel at the
25  administrative level as well, has failed to present evidence that
26  his obesity had any effect on his functional limitations or was
27  equivalent to a listed impairment. Accordingly, it does not
28  appear that the ALJ erred in his analysis of Plaintiff's obesity,

which was consistently diagnosed by Plaintiff's treating physician, but which was not demonstrated by any evidence to have resulted in any functional limitations. Cf. Burch v. Barnhart, 400 F.3d 676, 681-684 (9th Cir. 2005).

Because the Court has concluded that Plaintiff's claims of error are unfounded, no remand is called for, and it is unnecessary for the Court to consider the scope of any remand.

In summary, based on the foregoing, the Court concludes that the ALJ's decision was supported by substantial evidence in the record as a whole and was based on proper legal standards.

<u>DISPOSITION</u>

Accordingly, the Court AFFIRMS the administrative decision of the Defendant Commissioner of Social Security and DENIES Plaintiff's Social Security complaint.

The Clerk of the Court IS DIRECTED to enter judgment for Defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against Plaintiff David Stine.

IT IS SO ORDERED.

**Dated:   March 9, 2006**          **/s/ Sandra M. Snyder**
icido3                      UNITED STATES MAGISTRATE JUDGE